_____



**SO ORDERED,**

*Edward Ellington*

**Judge Edward Ellington**
**United States Bankruptcy Judge**
**Date Signed: February 22, 2017**

The Order of the Court is set forth below. The docket reflects the date entered.
_____

IN THE UNITED STATES BANKRUPTCY COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:                                                                                               CHAPTER 11

JAMES ALVIN BRUCE                                            CASE NO. 16-03926-ee

**AGREED ORDER GRANTING INTERIM USE OF CASH COLLATERAL, GRANTING ADEQUATE PROTECTION AND CONDITIONAL RELIEF FROM THE AUTOMATIC STAY**

THIS CAUSE, came on to be heard on the motion of Trustmark National Bank, ("Trustmark"), to prohibit the use of cash collateral and for adequate protection (Doc. 16) in the above styled and numbered cause. The Court, being fully advised in the premises, finds as follows:

1. This Court has jurisdiction over the motion pursuant to the provisions of, *inter alia,* 28 U.S.C. §§ 157 and 1334, 11 U.S.C. §§ 361 and 363, and Bankruptcy Rules 4001 and 9014.

2. On December 5, 2016, the Debtor, James Alvin Bruce ("the Debtor") filed his Chapter 11 petition for relief in this Court. The Debtor is a medical provider. The Debtor is the sole shareholder of Jackson Eye Institute, PLLC ("PLLC"), a Mississippi professional limited liability company, and the sole member of Jackson Eye Institute Ambulatory Surgery Center, LLC ("LLC"), a Mississippi limited liability company. The PLLC and LLC have been administratively dissolved by the Mississippi Secretary of State. In anticipation of filing his bankruptcy petitions and

immediately prior to the filing of his Debtor's Chapter 11 petition, the Debtor caused all assets of the PLLC and LLC to be conveyed to him.

3. Trustmark is a fully secured creditor and party in interest in the above-referenced Chapter 11 case.

4. On or about July 18, 2013 the PLLC and LLC executed a Promissory Note, No. xxxx4904, in favor of Trustmark in the original principal amount of $1,301,259.50, bearing interest at a per annum rate of 4.450% with a maturity date of August 5, 2019.

5. The Debtor executed a Commercial Guaranty in favor of Trustmark under which he guaranteed payment of the PLLC and LLC debt to Trustmark, plus all costs and expenses, including attorneys fees incurred in the enforcement of the guaranty.

6. The PLLC and LLC defaulted on their obligation to pay Trustmark the amounts due on the Note. As of September 27, 2016 the Note was in arrears, including late fees, in the amount of $135,893.15. As a result of the default, prior to the filing of the Debtor's bankruptcy petition, Trustmark accelerated the sums due on the Note in September 2016. As of September 7, 2016, the amount due on the Trustmark loan was $892,894.84, plus interest, late fees, attorneys fees and all costs of collection as may be allowed by law.

7. On July 18, 2013 the PLLC and LLC executed a Commercial Security Agreement in favor of Trustmark. Under the terms of the Security Agreement granted Trustmark a security interest in, among other collateral, "all accounts, general intangibles, instruments, rents, monies, payments, and all other rights arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section." Trustmark perfected its lien position in the subject accounts through the filing of an UCC Financing Statement with the Mississippi Secretary of State on December 17, 2015.

8. By virtue of the Security Agreement, Trustmark has a perfected security interest in Debtor's cash collateral as defined by 11 U.S.C. §363. Trustmark's lien on the cash collateral extends to and includes amounts collected by the Debtor post-petition pursuant to 11 U.S.C. §552(b).

9. No response or objection has been filed in response to Trustmark's motion. However, the Court has been advised that Trustmark and the Debtor have reached an agreement for interim use of cash collateral pursuant to 11 U.S.C. §363(c)(2)(A) as provided herein.

10. The Court finds that the agreement reached between Trustmark and the Debtor is well taken and should be approved by the Court.

IT IS THEREFORE, ORDERED as follows:

A. The Debtor is conditionally authorized to use Trustmark's cash collateral as provided herein.

B. Commencing in April 2017 the Debtor shall begin making monthly adequate protection payments to Trustmark in the amount of $5,000.00 on the 1st day of each month and $5,000.00 on the 15th day of month until further order of the Court or confirmation of a plan of reorganization. The failure to make any adequate protection payment to Trustmark within 7 days of the date any such payment is due shall be a default under this Order.

C. The Debtor shall provide Trustmark with a monthly accounts receivable aging report by the 15th day of each month for each preceding month commencing on February 15, 2017 for the January 2017 monthly accounts receivable aging report. The failure to provide Trustmark with a monthly accounts receivable aging report by the 15th day of each month for each preceding month shall be default under this order.

D. The Debtor shall maintain a debtor-in-possession cash collateral account (the "DIPCC account") and shall provide Trustmark with monthly account statements for the DIPCC account by the 15th day of each month for the preceding month. The Debtor shall be required to deposit all cash collateral receivables in the DIPCC.

E. Upon reasonable notice by Trustmark, the Debtor shall permit representatives of Trustmark (and any accountants, attorneys or other professionals they may retain) to have access to the books and records of the Debtor during reasonable business hours for inspection and auditing purposes.

F. The Debtor shall retain a broker, subject to the approval of the Court, to list his medical practice for immediate sale, which shall include all assets connected with the Debtor's medical practice. The Debtor shall file a motion to approve the listing broker for his medical practice on or before February 28, 2017.

G. The Debtor shall immediately reduce the listing price on his residence located at 126 Little Creek Road, Ridgeland, MS 39157 to $1,749,000.00. The Debtor shall further keep his mortgage payments to Wells Fargo Bank and BankPlus current until further order of the Court or confirmation of a plan of reorganization.

H. The Debtor shall maintain hazard insurance policies on all collateral pledged to Trustmark, listing Trustmark as a loss payee on all such hazard insurance policies.

I. In the event the Debtor defaults under any term or condition of this Order and fail to cure such default as provided herein within five (5) days of Trustmark providing written notice of default to counsel for the Debtor, then upon Trustmark filing a Notice of Default with the Court, the Debtor shall immediately: (1) cease using Trustmark's cash collateral; and (2) deliver to Trustmark all cash collateral in his possession or subject to his control. Further, the automatic stay of 11 U.S.C.

§ 362 shall be deemed dissolved, terminated and annulled as it applies to Trustmark without further order of the Court to enable it to exercise its rights and remedies under state or federal law to its collateral. The Debtor shall only have a single notice of a right to cure and Trustmark shall be entitled to the relief granted in this paragraph upon Trustmark filing a Notice of Default with the Court upon a second default by the Debtor.

   J. Trustmark's consent to the relief herein will not constitute a waiver of any of its rights, claims and defenses against the Debtor, including (but not limited to) the right to payment of default interest and legal fees and expenses. Trustmark does not waive any matters, claims or defenses that it might have raised had the agreement herein not been entered into.

   K. Trustmark's pre-petition liens shall not be altered, subordinated or otherwise adversely affected including, but not limited to, by any financing approved under 11 U.S.C. § 364 unless Trustmark consents in writing.

   L. The Court retains jurisdiction over any dispute regarding the terms and conditions of this Order. The terms and conditions of this Order shall be binding upon the Debtor and any trustee of the Debtor's estate appointed in this or any other case. The protections granted to Trustmark herein shall survive the filing of any subsequent case or entry of any other order by this Court in this case including, but not limited to, dismissing or converting this case to any other chapter under the Code. However, this Order does not dictate the terms and conditions of any plan that may be filed by the Debtor.

   M. The Court finds that Trustmark's motion provided reasonable notice of the material provisions of the agreement contained herein and opportunity for a hearing, and finds that the procedures described in B.R. 4001(d)(l)-(3) shall not apply and that the agreement contained herein may be approved without further notice.

      N.      The stay of execution of B.R. 4001(a)(3) and 6004(h) is hereby waived.

#END OF ORDER#

AGREED AND APPROVED:

*/s/Patrick F. McAllister*
Patrick F. McAllister,
Attorney for Trustmark National Bank

*/s/Craig M. Geno*
Craig M. Geno,
Attorney for the Debtor